IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BARBARA DENNIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JAMES DENNIS, DECEASED; JILL DENNIS; LAUREN DENNIS; AND JAMES SILER,<br><br>*Plaintiff*,<br>v.<br><br>CHESAPEAKE ENERGY CORPORATION,<br><br>*Defendant*. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:10-CV-95 |

## MEMORANDUM OPINION AND ORDER

**I.  Introduction**

Before the Court is the Motion to Transfer Venue by Defendant Chesapeake Energy Corporation ("Chesapeake" or "Defendant"). (Dkt. No. 15.) The Court, having considered the venue motion and the arguments of counsel, DENIES the motion to transfer venue by Chesapeake to the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). The balance of the private and public factors demonstrates that the transferee venue is not "clearly more convenient" than the venue chosen by Barbara Dennis, individually, and as representative of the estate of James Dennis, deceased; Jill Dennis; Lauren Dennis; and James Siler (collectively, "Plaintiffs"). *See In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

## II. Factual and Procedural Background

This case arises out of an incident at a gas well site in Desoto Parish, Louisiana, which resulted in personal injuries to James Siler and the death of James Dennis. The well site is purportedly operated by Chesapeake.[1] At the time of the incident, all the Plaintiffs, including James Siler and James Dennis, resided in Cherokee County, Texas, which is within the Eastern District of Texas. Chesapeake is an Oklahoma corporation with its principle place of business located in Oklahoma City, Oklahoma. However, Chesapeake maintains an extensive presence in the Eastern District of Texas as it owns and operates numerous wells in the District. Two contractor companies, Innovative Wellsite Systems, Inc. ("Innovative") and JetBlast, Inc. ("JetBlast"), were on the premises at the time of the incident servicing the wellhead in question. Innovative is based in Montgomery County, Texas (in the Southern District of Texas), and JetBlast is based in Leon County, Texas (in the Western District of Texas). After the accident occurred at the well site, local law enforcement and emergency services personnel responded to the accident (the "first responders"), and these first responders were all from Louisiana. James Siler received medical treatment at the LSU Health Sciences Center in Shreveport, but Mr. Siler's continuing and long-term medical therapy is being performed with Doctors and others in the Eastern District of Texas.

On March 19th, 2010, Plaintiffs filed this suit against Chesapeake in the Eastern District of Texas under 28 U.S.C. § 1332. On June 1, 2010, Chesapeake filed this motion to transfer venue to the Western District of Louisiana, and Chesapeake argues it is clearly more convenient to be in

---

[1] In Chesapeake's motion, Chesapeake states that the well is operated by Chesapeake Operating, Inc. instead of Chesapeake Energy Corporation. (Def's Br., Dkt. No. 13, at 1.) This Court's present analysis is not affected either way.

Shreveport, Louisiana—a mere forty miles from Marshall, Texas. (Dkt. No. 15.) For the reasons below, this Court disagrees.

## III. Analysis

### A. Applicable Law Regarding Motions to Transfer

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Fifth Circuit has enunciated the standard to be used in deciding motions to transfer venue. *See Volkswagen II*, 545 F.3d 304. The moving party must show "good cause," and this burden is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient." *Id.* at 314.

The initial threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative conveniences of the current district against the transferee district. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity

of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Id.*

**B.     Proper Venue**

The threshold "determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed" in the first place. *Volkswagon I*, 371 F.3d at 203. The Western District of Louisiana is a proper venue for Chesapeake, and Plaintiffs do not dispute that the Western District of Louisiana would have been a proper venue in which the claim could have originally been filed. "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought . . . in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). Plaintiffs filed this suit against Chesapeake for personal injuries resulting from an accident occurring in the Western District of Louisiana. Hence, the Western District of Louisiana is a proper venue because a substantial part of the events or omissions giving rise to this claim occurred in the Western District of Louisiana.

**C.     Private Interest Factors**

   1.     *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first factor to consider, and this factor is neutral. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. A substantial part of the evidence is in DeSoto Parish, Lousiana, as the accident happened there and the first responders to the scene live in the area. But the driving distance between Shreveport and DeSoto Parish is 36.6 miles, and the driving distance between the

4

Marshall and DeSoto Parish is 65.6 miles. Thus, this particular evidence is 29 miles further from Marshall than Shreveport. Indeed, the courthouses in Marshall and Shreveport are only 40 miles apart, so at most, any particular source of proof would be 40 miles closer to Shreveport than Marshall. The Court believes that such an inconvenience is insubstantial. Further, some sources of proof in this case are closer to Marshall than Shreveport—Marshall is closer to any sources of proof that are located at or near the residences of the Plaintiffs, in Cherokee County, Texas. Therefore, the Court concludes this factor is neutral.

2. *Availability of Compulsory Process*

The next private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses, and this factor is neutral. Rule 45(c)(3)(A)(ii) limits the Court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Volkswagen II*, 545 F.3d at 316. The parties agree that most of the witnesses in this case are subject to the subpoena power of either court. Therefore, this factor is neutral.

3. *Cost of Attendance for Willing Witnesses*

Next, the Court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Western District of Louisiana, and the Court concludes that this factor is neutral. The Fifth Circuit has explained:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

5

*Volkswagen I*, 371 F.3d at 204-05. The Court must consider the convenience of both the party and non-party witnesses. *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d. 761, 765-66 (E.D. Tex. 2009).

Some witnesses, such as the Plaintiffs, are closer to Marshall, but witnesses located in DeSoto Parish are closer to Shreveport. In any event, the courthouses in Marshall and Shreveport are only 40 miles apart. At most, any witness would have to travel an additional 40 miles to appear in either court, so the additional cost for witnesses to travel and attend trial for either court is insignificant. Thus, this factor is neutral.

### 4. *Other Practical Problems*

Practical problems include issues of judicial economy, and the Court concludes this factor is neutral. The Court often considers the possibility of delay and prejudice if transfer is granted, but delay and prejudice associated with transfer is relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence." *ICHL, LLC v. NEC Corp. of America*, No. 5:08-cv-65, 2009 WL 1748573, at *12 (E.D. Tex. June 19, 2009) (quoting *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003)). The parties have identified no "special circumstances," such as the possibility of delay or prejudice. Thus, this factor is neutral.

### D. **Public Interest Factors**

#### 1. *Court Congestion*

The Court may consider how quickly a case will come to trial and be resolved. *See Ray Mart, Inc. v. Stock Building Supply of Tex., LP*, 435 F. Supp. 2d 578, 595 (E.D. Tex. 2006). This factor is the most speculative, however, and in situations where several relevant factors weigh in

6

favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors. *See id*. *See also In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (applying Fifth Circuit law). Chesapeake argues the Western District of Louisiana has fewer filings per judgeship, fewer new filings, and fewer cases pending per judgeship than the Eastern District of Texas. Plaintiffs argue the Eastern District Judges are handling their cases more efficiently. Neither party argues one forum resolves cases more quickly than the other. Given the conflicting evidence and the speculative nature of this factor, the Court concludes it to be neutral.

      2.    *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). The Western District of Louisiana does have some local interest in this case. The accident occurred in the Western District of Louisiana and the first responders in the case were from Louisiana. However, the Eastern District of Texas has more local interest in this litigation. First, the Plaintiffs are from the Eastern District of Texas. It is not a Louisiana community that suffers the loss of one of its members; instead, it is a town in the Eastern District of Texas. As Plaintiffs correctly state in their brief, "unlike the citizens of East Texas, once the smoke cleared and the sirens faded, those in the DeSoto Parish could move on." (Pl's Br., Dkt. No. 14, at 6.) Additionally, the Eastern District of Texas has an interest in the operations of Defendant Chesapeake in the Haynesville Shale. Although Chesapeake's brief states that "[t]he incident giving rise to this suit occurred in . . . the Haynesville Shale, which is centered in [the Western District of Louisiana]," (Def's Br., Dkt. No. 13, at 14), Chesapeake

7

conveniently fails to mention that the Haynesville Shale extends into East Texas and that Chesapeake has operations there. Chesapeake's own website states: "Everything's bigger in Texas, including Chesapeake's Haynesville Shale operations."[2] Further, although not parties to this lawsuit at this time, there were other contractors helping operate the well in question when the underlying incident occurred, and these contractors are from Texas. (Def's Br., Dkt. No. 13, at 1-2.) Therefore, this factor weighs against transfer.

3. *Familiarity with the Governing Law*

One of the public interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Chesapeake argues the Court should apply Louisiana law. Plaintiffs argue the Court should apply Texas law. This Court need not decide the issue[3] at this point because even if this Court were to find that Louisiana law applies, it would not be enough to convince this Court to transfer venue. Even assuming, *arguendo*, that Louisiana law applies in this case, this Court is familiar in applying Louisiana law. This Court sits approximately twenty miles from the Louisiana border, and this Court, consequently, is very familiar with applying Louisiana law. Further, this is a simple negligence case and does not "involve any thorny or unusual issues of state law." *Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 541 (W.D. Tex. 2007). While the Western District of Louisiana likely has the occasion to apply Louisiana law more frequently and

---

[2] http://www.askchesapeake.com/Haynesville-Shale/TX/Pages/information.aspx (retrieved June 5th, 2010).
[3] The parties correctly note that a federal court sitting in diversity applies the conflict of laws rules in the state in which it sits. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003). Texas courts employ the "most significant relationship test." *Id.* The test considers the following contacts: (1) the place where the injury occurred; (2) the place where the injury causing conduct occurred; (3) the parties' residence; and (4) the place where the relationship, if any, between the parties is centered. *Id.* The first two contacts are clear—the injury occurred in Louisiana and the injury causing conduct occurred in Louisiana. However, the last two contacts are not clear. Several of the parties reside in Texas, and Plaintiffs argue that there are not enough discovered facts yet to fully understand where the relationship was centered. This Court agrees and, therefore, chooses to not decide which law applies at this time.

8

is thus more familiar, this Court is not lacking in familiarity. Therefore, even assuming Louisiana law applies, this factor, at most, only slightly favors transfer.

    4.    *Avoidance of Conflict of Laws*

The final public interest factor is the preference of avoiding unnecessary problems of conflict of laws. The Court finds that both the Western District of Louisiana and the Eastern District of Texas are "equally able to resolve any choice of law issues presented by Plaintiffs' claims." *Id.* Consequently, this factor is neutral.

## III. Conclusion

Considering all of the private and public interest factors, Chesapeake has not met its burden of showing that the Western District of Louisiana is "clearly more convenient" than the Eastern District of Texas. *See Volkswagen II*, 545 F.3d at 315. Local interests weigh against transfer. On the other hand, the familiarity with the governing law, at most, slightly weighs in favor of transfer, and all other factors are neutral. Therefore, Chesapeake's motion to transfer venue is DENIED.

It is so ORDERED.

SIGNED this 7th day of October, 2010.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE